# United States Court of Appeals

## For the First Circuit

No. 02-1226

RAYMOND ELLSWORTH,

Petitioner, Appellant,

v.

WARDEN, NEW HAMPSHIRE STATE PRISON, and PHILIP MCLAUGHLIN,
ATTORNEY GENERAL FOR THE STATE OF NEW HAMPSHIRE,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Selya, Lynch, Lipez, and Howard,[*] Circuit Judges.

Andrew R. Schulman with whom Getman, Stacey, Tamposi,
Schulthess & Steere, P.A. were on brief for appellant.
James D. Rosenberg, Assistant Attorney General, for appellees.

June 16, 2003

OPINION EN BANC

[*]Judge Howard is recused in this matter.

**BOUDIN, <u>Chief Judge</u>**.  Raymond Ellsworth appeals from the district court's judgment denying his petition under 28 U.S.C. § 2254 (2000) for a writ of habeas corpus.  Between 1988 and 1992, Ellsworth worked at the Spaulding Youth Center ("Spaulding"), a residential school and treatment facility for children with emotional, behavioral, and neurological impairments, in Northfield, New Hampshire.  Ellsworth was a "cottage teacher" at Colcord Cottage, a dormitory facility at Spaulding for boys between the ages of six and twelve.  His job included supervising the boys at meals and on field trips, meeting with several students on a weekly basis, and sleeping in the staff room at the cottage approximately once a week.

In November 1991, an eleven-year-old boy named Matthew was transferred from another treatment facility to Spaulding's Colcord Cottage.  In November 1992, Matthew accused Ellsworth of sexual abuse.  In January 1995, Ellsworth was tried in New Hampshire state court on four counts of aggravated felonious sexual assault and eight counts of felonious sexual abuse, relating to three different alleged episodes of abuse.  The primary evidence at trial was the conflicting testimony of Ellsworth and Matthew.

Matthew testified that Ellsworth sexually abused him on three separate occasions.  He claimed that the first occurred on a bicycle trip near Spaulding in the summer of 1992.  Matthew stated that Ellsworth lured him into the woods by claiming that he heard

-2-

a noise and then pulled down his own pants and told Matthew to touch and put his mouth on Ellsworth's penis.  Matthew said that Ellsworth's penis became erect when Matthew did this and that Ellsworth also took off Matthew's pants and touched his penis. Matthew claims that Ellsworth threatened to hurt him if he told anyone about the incident.

According to Matthew, the second incident took place at a swimming pond near Spaulding when Matthew went swimming with Ellsworth and another Spaulding resident named Stephen.  Matthew claimed that the three were in the pond and that Ellsworth asked Stephen to swim away.  Matthew recalled that no one else was at the pond and that Ellsworth removed both of their bathing suits, touched Matthew's penis and buttocks, and told him to put his mouth on Ellsworth's penis.  Matthew said that Ellsworth again told him not to tell anyone about the incident.

The third and final incident allegedly occurred when Matthew returned early to Spaulding from a weekend home-visit and Ellsworth was the only staff member on duty.  Matthew stated that while he was putting on his pajamas, Ellsworth entered his room and touched him.  He also asked Matthew to put his mouth on Ellsworth's penis.

Ellsworth denied all three incidents.  He claimed that he never took a bicycle ride with Matthew without others present, and that he did not draw Matthew into the woods.  He also stated that

-3-

he did go swimming with Matthew and Stephen, but that nothing sexual occurred. Ellsworth denied that he ever abused Matthew at the cottage.

Little direct or circumstantial evidence supported either side's version of events. Another cottage resident testified that Matthew had previously told him that Ellsworth had molested him in the afternoon but mentioned nothing concerning the evening abuse about which Matthew testified at trial. Stephen, the boy who accompanied Matthew and Ellsworth on the swimming trip, also testified and stated that he went on two such trips with Matthew, but that the pond had been crowded on both occasions and that he had been within twenty feet of Matthew and Ellsworth and did not notice anything unusual. Ellsworth offered evidence, described below, seeking to cast doubt on Matthew's credibility but the evidence was not allowed.

The jury convicted Ellsworth on two counts of aggravated felonious sexual assault and five counts of felonious sexual assault. He was sentenced to 18 ½ to 37 years in prison, with an additional 14 to 28 years in prison deferred. The New Hampshire Supreme Court affirmed Ellsworth's conviction. New Hampshire v. Ellsworth, 142 N.H. 710 (1998). Ellsworth then petitioned for habeas relief in the federal district court on three grounds: first, that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to turn over exculpatory evidence; second, that

the trial court violated the confrontation clause, U.S. Const. amend. VI, by refusing to permit him to cross-examine Matthew as to sexual abuse by a babysitter when he was three; and third, that the trial court had similarly erred in excluding testimony from a counselor at the Pine Haven School, where Matthew lived after he left Spaulding, that Matthew falsely accused boys there of peeking at him in the shower and at the toilet and of stealing his toys.

The district court rejected all three constitutional claims and denied the petition. Ellsworth appealed, and a divided panel of this court reversed the district court on all three grounds. Concerned with the precedential effect of certain of the panel's rulings, the en banc court granted rehearing sua sponte and withdrew the panel opinion (as is customary when rehearing en banc is granted). We now resolve the merits, concluding that only one of Ellsworth's three constitutional claims is substantial and that as to it further proceedings are required.

Appellate review of the district court's denial of habeas relief is de novo, Almanzar v. Maloney, 281 F.3d 300, 303 (1st Cir. 2002), cert. denied, 123 S. Ct. 80 (2002), but we accord deference to the state court as to issues it actually decided. 28 U.S.C. § 2254(d)(1) (2000). In this case, the state court addressed only Ellsworth's claim that the trial court violated his rights under the confrontation clause by refusing to allow him to admit testimony from the counselor at Pine Haven. The state court did

not address Ellsworth's other two claims, and thus our review of those claims is de novo.  Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001), cert. denied, 535 U.S. 1018 (2002).[1]

We begin with the Brady claim.  Brady requires the prosecution to provide a defendant access to exculpatory evidence that is in the prosecutor's control.  373 U.S. at 87; Conley v. United States, 323 F.3d 7, 14 (1st Cir. 2003) (en banc).  Withheld evidence warrants undoing a conviction only when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," a "reasonable probability" here being one that is "sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

Ellsworth claims that the state withheld evidence as to three matters but only one seems to us potentially powerful enough even arguably to meet the reasonable probability standard.[2]  This is an intake note written by Jan Smith, Director of the Program for

---

[1]The state argues that Fortini is undermined by Early v. Packer, 123 S. Ct. 362, 365 (2002).  We do not think this is so-- Early said only that deference does not depend on the state court citing federal case law--but Ellsworth's other claims fail even under a de novo standard and therefore fail a fortiori under a more deferential one.

[2]The other two were (first) a critical incident report written by someone at Spaulding indicating that Matthew had been having dreams regarding his prior sexual victimization and (second) Spaulding records indicating that the staff at Spaulding was trying to get the case against the person who had previously sexually abused Matthew re-opened.

Emotionally Disturbed Boys at Spaulding, indicating that Matthew alleged that he was abused by staff members at Hampstead Hospital, where he stayed prior to his stay at Spaulding, that Matthew expressed concern that he would be sexually assaulted at Spaulding, and that Spaulding would need to take special precautions to protect staff members from false accusations if Matthew enrolled.

The intake note is exculpatory; it suggests that Matthew had made false accusations of sexual abuse against caretakers in the past. But there are two problems: first, the note itself is inadmissible as double hearsay; someone at Hampstead Hospital told Jan Smith that Matthew's accusations there were false and she then recorded this in her intake note. See New Hampshire v. Winders, 503 A.2d 798, 802 (N.H. 1985).[3] Second, New Hampshire only permits the defendant to introduce extrinsic evidence of a prior false allegation of sexual assault by the victim if the allegations are similar and the defendant can show that the prior allegations were "demonstrably false." New Hampshire v. Gordon, 770 A.2d 702, 704 (N.H. 2001); accord New Hampshire v. White, 765 A.2d 156, 159 (N.H. 2000).

---

[3]The note might be admissible as a business record of Spaulding if it recorded Smith's own knowledge of a prior false accusation, N.H. R. Evid. 803(6); but a note recording what someone outside the hospital told her is not within the business records exception when offered for the truth of the report, N.H. R. Evid. 805. See generally Ricciardi v. Children's Hosp. Med. Ctr., 811 F.2d 18 (1st Cir. 1987); Johnson v. Lutz, 170 N.E. 517 (N.Y. 1930).

The circuits are split on whether a petitioner can have a viable Brady claim if the withheld evidence itself is inadmissible. Most circuits addressing the issue have said yes if the withheld evidence would have led directly to material admissible evidence.[4] We have never squarely ruled on this question, but cf. United States v. Hemmer, 729 F.2d 10, 16 n.3 (1st Cir.), cert. denied, 467 U.S. 1218 (1984); United States v. Ranney, 719 F.2d 1183, 1190 (1st Cir. 1983), yet given the policy underlying Brady, we think it plain that evidence itself inadmissible could be so promising a lead to strong exculpatory evidence that there could be no justification for withholding it. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995), implicitly assumes this is so.

Whether the intake note at issue in this case undermines confidence in the verdict is a more difficult question. The clear implication of Jan Smith's note is that someone at Hampstead Hospital, where Matthew made the prior allegations, told her that the allegations were false. If the defense had known about the note before trial, it presumably could have traced those at Hampstead who could testify as to the circumstances of the allegations and the basis for believing them to be false. Whether

_____

[4]See, e.g., United States v. Gil, 297 F.3d 93, 104 (2d Cir. 2002); Bradley v. Nagle, 212 F.3d 559, 567 (11th Cir. 2000), cert. denied, 531 U.S. 1128 (2001); United States v. Phillip, 948 F.2d 241, 249 (6th Cir. 1991). But see Hoke v. Netherland, 92 F.3d 1350, 1356 n.3 (4th Cir. 1996).

-8-

the evidence would convincingly establish that Matthew had lied is hard to know but surely the episode most likely would have been investigated and the implication that someone at Hampstead believed it false is strong.

If strong evidence of a prior false accusation exists, it would be very powerful. The setting and type of alleged lie are similar, so this evidence would be far more potent than a random unrelated episode of untruthfulness by Matthew. Some evidence of Matthew's background, and possible instability, was admitted at Ellsworth's trial. Coupled with such proof, evidence that Matthew had falsely accused caretakers before could easily have created the reasonable doubt necessary to acquit Ellsworth in what was otherwise largely a credibility contest. The lack of any significant corroborating evidence makes this case unusual and heightens the concern about any Brady violation.

But this case presents a further peculiarity. Ellsworth's counsel now has the lead available to him and a basis for knowing how Jan Smith reached her conclusion. The district court stated that the intake note was prepared after an intake session at Spaulding when Matthew was referred there from Hampstead; and at this intake session, Jan Smith talked with Matthew and his mother, Matthew's psychiatrist at Hampstead, a Hampstead social worker, and a Hampstead nursing supervisor. However, Ellsworth's counsel has not explained whether these

sources have been questioned; and, if so, whether this has led to admissible evidence or whether evidence once existed but is no longer available; or, if the lead has not been pursued, why not. Curiously, the state has not emphasized this gap.

Nevertheless, it would be very odd for us to require a new trial because of a wrongly withheld lead unless the lead would, or would likely, have led to valuable new evidence which was itself arguably admissible (the final decision is for the state court). However unlikely it might be after eight years, the state would be entitled to retry Ellsworth if the writ were granted; yet such a remedy would be incongruous unless evidence existed that might alter the result at such a trial. Habeas doctrine is flexible enough for us to condition a grant of the writ on the outcome of a further inquiry into where the lead, even though wrongly withheld, would have taken Ellsworth. Cf. Manko v. United States, 87 F.3d 50, 55 (2d Cir. 1996); Stewart v. Coulter, 48 F.3d 610, 617 (1st Cir.), cert. denied, 516 U.S. 853 (1995).

If there exists admissible evidence that Matthew made demonstrably false accusations at Hampstead Hospital under similar circumstances and Ellsworth was not otherwise aware of these allegations at the time of the first trial, a new trial is required. If admissible evidence of false accusations never existed, the writ should be denied. If it did or may well have existed but has been lost because of the Brady violation and the

-10-

ensuing delay in discovery of this fact, Ellsworth may have a good claim to a new trial, cf. California v. Trombetta, 467 U.S. 479, 486-88 (1984), but we need not definitively resolve this issue. It is difficult to foresee every possible outcome of a further inquiry and--apart from a clear-cut decision that the evidence does exist or never existed--the district court must exercise its own judgment in the first instance.

In his supplemental brief, Ellsworth argues for the first time that the state standard for the admission of such evidence--that prior false accusations be not only false but "demonstrably" so--is itself too demanding and therefore unconstitutional. For this proposition, he cites some state court authority but no Supreme Court or federal circuit case in point. As we explain below, the confrontation clause objection is pretty well limited to extreme cases where the state restriction is patently unreasonable, so Ellsworth's newest claim is an uphill struggle; but we need not resolve the issue now.

The initial question on remand is whether Ellsworth can produce non-hearsay evidence that Matthew previously made false accusations in pertinently similar circumstances. If he cannot do so, the constitutional issue is moot; this is equally so if he produces evidence that Matthew did make "demonstrably false" accusations. If and when Ellsworth produces admissible evidence of prior accusations that were probably false but not "demonstrably

-11-

false," he is free to make his new constitutional argument in the district court (subject to whatever other limitations--e.g., Teague v. Lane, 489 U.S. 288 (1989)--might otherwise apply).

One other issue may be presented on remand. If the state continues to contest the issue, the district court on remand should also decide whether Ellsworth had independent knowledge of the intake note at the time of trial. In general, "[e]vidence is not suppressed if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982), cert. denied, 459 U.S. 1174 (1983). The district court did not resolve the issue because it resolved the Brady claim on a different ground.[5]

The "should have known" standard refers to trial preparation; and whether or not Ellsworth was careless in his perusal of the file while a cottage teacher does not matter. But if he in fact knew of the note at the time of his trial and failed to pursue the lead, then his Brady claim might well be barred. The state has identified nothing in the record that shows affirmatively

---

[5]The district court held that the intake note was not material because Ellsworth knew that Matthew's parents feared that he had made false allegations in the past and because the district court thought that the prosecution's case was quite strong. In our view, evidence that Matthew had in fact falsely accused other caretakers of sexual abuse is much more potent and, as to the strength of the case against Ellsworth, it appears to us to have rested largely on Matthew's otherwise uncorroborated allegations of abuse.

that Ellsworth did have timely knowledge of the note, but it does point to an Ellsworth affidavit filed in connection with the habeas petition that--in listing information new to Ellsworth--omits the note or its contents.  The omission may or may not be significant; but we cannot dismiss the state's claim of knowledge out of hand.

Finally, we reach Ellsworth's claims under the confrontation clause.  Ellsworth first argues that the trial court should have allowed him to introduce evidence that Matthew was sexually abused when he was three years old.  Ellsworth claims that this evidence would have been relevant as a possible explanation for why Matthew could describe sexual acts in such detail, thus making more plausible the possibility that Matthew was fabricating his claim against Ellsworth. The district court held that the exclusion of this evidence did violate Ellsworth's rights under the confrontation clause, but that the error was harmless.

Harmless or not, we do not think that Ellsworth has shown a violation of the confrontation clause at all.  "The Confrontation Clause lies obscurely behind . . . claims of evidentiary error because, in a few extreme cases, the Supreme Court has invoked it to overturn state court restrictions on cross-examination or impeachment.  However, such a challenge is tenable only where the restriction is manifestly unreasonable or overbroad."  United States v. Gomes, 177 F.3d 76, 81-82 (1st Cir.), cert. denied, 528 U.S. 911, 941 (1999).  Cf. Chambers v. Mississippi, 410 U.S. 284

-13-

(1973) (overturning the defendant's murder conviction where the court excluded evidence that another person had repeatedly confessed to the murder).

Ellsworth cannot make such a showing here. Courts routinely exclude evidence regarding the sexual history of an alleged victim of sexual abuse. See, e.g., Fed. R. Evid. 412. These restrictions are designed to give sexual assault victims "heightened protection against surprise, harassment, and unnecessary invasions of privacy." Michigan v. Lucas, 500 U.S. 145, 150 (1991). The evidence of abuse when Matthew was three is far from highly probative as to his sexual knowledge at age twelve. Compare United States v. Begay, 937 F.2d 515, 520-24 (10th Cir. 1991).

The earlier abuse was obviously remote in time and different in circumstances and the prosecution never argued that the alleged abuse was Matthew's only source of sexual knowledge. And, even if the jury did not know on its own that a twelve-year-old had likely acquired some general knowledge of sex, Matthew himself testified at trial that he participated in group discussions at Spaulding regarding topics such as "good and bad touching," showing an alternate basis for at least some of his sexual knowledge. Finally, Ellsworth himself indicated in his testimony that Matthew had been abused in the past.

-14-

Our result here is similar to the Tenth Circuit's decision in United States v. Powell, 226 F.3d 1181 (10th Cir. 2000), cert. denied, 531 U.S. 1166 (2001). There, the defendant was accused of sexually assaulting a thirteen-year-old girl. At trial, the defendant sought to introduce evidence regarding the victim's allegedly flirtatious behavior in the past, but the district court ruled that the evidence was inadmissible under Fed. R. Evid. 403 and 412. Id. at 1197. On appeal, the Tenth Circuit rejected the defendant's confrontation clause claim, explaining "the relevance of [the victim's] alleged conduct to rebut any inference the jury may have drawn regarding her sexual naivety is too attenuated. . . ." Id. at 1199.

Perhaps under state law the trial judge should have admitted the episode as to what happened when Matthew was three; quite likely many judges would have admitted it. But trial judges are constantly making on-the-spot judgments as to whether evidence, although formally relevant, is too remote, likely to lead to unnecessary excursions, or partly or wholly duplicative--the range of considerations embraced in the federal courts by Rule 403's balancing test. Fed. R. Evid. 403. Close calls are common and, right or wrong, do not thereby become constitutional violations. Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986).

Ellsworth's remaining claim is that the trial court violated the confrontation clause by refusing to allow him to offer

testimony from a counselor at the Pine Haven School, the facility where Matthew lived after he left Spaulding, that Matthew falsely accused boys at the school he attended after Spaulding of peeking at him in the shower and at the toilet and of stealing his toys. Here Ellsworth has a further hurdle because the state court considered the constitutional claim and rejected it, so under the statute we can only reverse if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

Quite apart from the higher standard, there is nothing unusual about limiting extrinsic evidence of lies told by a witness on other occasions; under the Federal Rules of Evidence, exclusion of such evidence is the usual rule and even cross-examination as to such lies is limited. The theory, simple enough, is that evidence about lies not directly relevant to the episode at hand could carry courts into an endless parade of distracting, time-consuming inquiries. In this instance, a lie about toy stealing or peeping at a different time and location from the alleged sexual abuse by Ellsworth is classic "collateral" evidence regularly excluded in federal criminal trials. See Fed. R. Evid. 608(b).

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

**--Separate opinions follow--**

**LIPEZ, Circuit Judge (concurring).**  I am pleased to join Chief Judge Boudin's opinion for the en banc court, including the decision to remand Ellsworth's Brady claim to the district court for an evidentiary hearing.  Having concluded in my earlier dissent from the panel decision, now withdrawn, that Ellsworth had failed to establish a Brady violation, I wish to explain briefly my concurrence in the court's decision to remand the Brady claim for further consideration.

Relying on our previous decision in United States v. Ranney, 719 F.2d 1183 (1st Cir. 1983), I had concluded that the evidence disclosed in Jan Smith's intake note failed Brady's materiality requirement because almost all of the withheld evidence would have been inadmissible at trial.  See id. at 1190 ("Inadmissible evidence is by definition not material, because it never would have reached the jury and therefore could not have affected the trial outcome."); see also United States v. Hemmer, 729 F.2d 10, 16 n.3 (1st Cir.), cert. denied, 467 U.S. 1218 (1984).  Today the en banc court has ruled, in conformity with a majority of the circuits, that the petitioner can also establish a viable Brady claim by demonstrating that withheld evidence, though itself inadmissible, would have led directly to the discovery of material admissible evidence.  Under this sensible rule, Ellsworth is entitled to an evidentiary hearing where he will have the opportunity to establish that information in the withheld intake

-18-

note would have led the defense to other material exculpatory evidence.

I also concluded, on the basis of the present record, that Ellsworth either had or should have had independent knowledge of the intake note prior to trial. See United States v. Diaz, 922 F.2d 988, 1007 (2d Cir. 1990) ("Evidence is not 'suppressed' [within the meaning of Brady] if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence."). Of necessity, I drew inferences from a record which never addressed directly Ellsworth's awareness of the intake note. In its supplemental brief to the en banc court, the state has asserted vigorously that Ellsworth knew or should have known of the intake note prior to his trial. Assuming the state maintains this position on remand, the en banc court has also directed the district court to further investigate at the evidentiary hearing the nature and timing of Ellsworth's knowledge of the intake note. This issue is a critical element of Ellsworth's Brady claim, and I agree that it warrants additional treatment by the district court.

**TORRUELLA**, <u>Circuit Judge</u>, **concurring in part and dissenting in part.**  I concur in the majority's decision to grant an evidentiary hearing on remand, but I write[6] separately because I respectfully think this Court needs to go further.  Not only is the <u>Brady</u> claim based on the Jan Smith intake note and other withheld exculpatory evidence sufficiently strong to warrant a new trial, but I also think that the defendant has raised two meritorious Confrontation Clause claims and therefore dissent from the majority's affirmance of those claims.

As the majority states, "[l]ittle direct or circumstantial evidence supported either side's version of events" in this case.  There was no corroboration of the boy's testimony as to the criminal acts themselves.  The jury had no information that would help it test the boy's credibility because, as the majority correctly points out, the evidence Ellsworth offered "seeking to cast doubt on Matthew's credibility . . . was not allowed."  The possibility that an innocent man was convicted is very real, and a new trial, not just an evidentiary hearing on a limited due process issue, is warranted.

---

[6]I reiterate here the bulk of the original panel opinion, written by Judge Betty Fletcher, which has been vacated.

<u>I.  Analysis</u>

<u>A.  Standard of Review</u>

As explained by the majority, a de novo standard of review applies to both the <u>Brady</u> claim and the Confrontation Clause claim regarding cross-examination about Matthew's prior abuse.  The "claim that the trial court violated [Ellsworth's] rights under the Confrontation Clause by refusing to allow him to admit testimony from the counselor at Pine Haven," however, is subject to deferential review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.

<u>B.  Brady Claim</u>

The district court found that there were essentially two new and undisclosed pieces of evidence - the Jan Smith note expressing concern that Matthew might make false accusations of sexual abuse and the reports bearing on the extent to which Matthew had been reliving and dreaming about his earlier abuse - but concluded that "[t]aken as a whole, in the context of the other information known to the defense, that information was not of significant value."  I disagree.  The information that the <u>Spaulding director</u> recognized, and was concerned, that Matthew had a tendency to accuse people of sexual abuse does seriously undermine one's confidence in the outcome of the trial.  The district court maintains that this information is insignificant because Ellsworth knew that Matthew's <u>parents</u> had such a concern,

-21-

but it is an entirely different matter that a Spaulding director, a professional who works with emotionally disturbed boys on a daily basis, highlighted this as a potential problem. Especially in light of the extent to which the trial judge curtailed cross-examination of Matthew himself, this information becomes even more important. Had the jury been presented with this information, along with the information that Matthew was reliving his abuse, it seems to me far from clear that it would have reached the same conclusion as to Matthew's credibility.

Likewise, the fact that Matthew had recently been reliving and having nightmares about his earlier abuse is also significant here. The jury reached its conclusion that Matthew's allegations were credible with no information about a part of his life that bore significantly on his mental and emotional state.

Looking at the evidence cumulatively, as Kyles requires, 514 U.S. at 437, the suppressed evidence is sufficient to undermine confidence in the jury's verdict. While I am joining the majority's decision in order to provide Ellsworth with at least an evidentiary hearing, my preference would be to reverse the district court on the Brady claim and grant the writ of habeas corpus so that he receives a new trial.

C. Confrontation Clause Claims

The majority "do[es] not think that Ellsworth has shown a violation of the Confrontation Clause at all." I disagree. I

-22-

think that Ellsworth has two legitimate claims under the Confrontation Clause: one for the erroneous exclusion of the evidence of his prior abuse and one for the exclusion of testimony regarding his prior false accusations.

1. Prior Abuse

The district court found that Ellsworth's Confrontation Clause rights were in fact violated by the trial court's refusal to allow cross-examination of Matthew on the issue of his prior sexual abuse, which his defense counsel argued was relevant both (1) as an explanation for why he could describe sexual acts in such detail and (2) to show the possibility that he was fabricating his claim against Ellsworth. Matthew's guardian ad litem maintained that the abuse should not be brought up at trial due to its being too far in the past and the possible detrimental effect of such cross-examination on Matthew.

The trial court ultimately ruled that the prior abuse was "irrelevant" because it was too different in nature from the conduct with which Ellsworth was charged, and because Ellsworth did not prove that it was the prior abuse, rather than some other source of information, that might have provided Matthew with his sexual knowledge. The trial judge allowed defense counsel to cross-examine Matthew only as to the general facts of his participation in group therapy, and the fact that the group discussed the difference between "good touch" and "bad touch." No

other evidence of Matthew's prior sexual abuse was introduced at trial; the jury knew only that Matthew was at Spaulding and had participated in group therapy, not that he had been sexually abused earlier in his life. With all due respect to the majority, I fail to see how a group discussion of "good and bad touching" can be viewed as providing Matthew with the same sort of detailed sexual knowledge he would have gleaned from having undergone abuse previously.

In this case, the district court correctly rejected the trial court's rationale for denying Ellsworth the right to cross-examine Matthew concerning his earlier sex abuse. The district court observed that the state courts had all ignored the common element of fellatio in both Matthew's earlier experiences and the charged conduct in this case, and concluded that the evidence at issue "might have provided facts from which jurors could have appropriately drawn inferences related to the reliability of Matthew as a witness." I agree with the district court that Ellsworth's rights under the Confrontation Clause were violated when the trial judge failed to allow him to cross-examine Matthew on his earlier sexual abuse.

I disagree with the district court's finding that this error was harmless, however, and find that the trial court's bar on cross-examination of Matthew does indeed give rise to "grave doubt about whether a trial error of federal law had substantial and

injurious effect or influence in determining the jury's verdict."
O'Neal v. Mcaninch, 513 U.S. 432, 436 (1995).  The trial court made
a critical mistake when it denied Ellsworth the opportunity to
present the jury with facts from which to draw a more accurate
picture of Matthew's emotional and psychological condition.[7]

---

[7]In Delaware v. Van Arsdall, 475 U.S. 673 (1986), the Supreme
Court enumerated several factors that go into assessing whether
error is harmless, including "the importance of the witness'
testimony in the prosecution's case, whether the testimony was
cumulative, the presence or absence of evidence corroborating or
contradicting the testimony of the witness on material points, the
extent of cross-examination otherwise permitted, and, of course,
the overall strength of the prosecution's case."  475 U.S. at 684.
    Looking at this case in light of the Van Arsdall factors, the
harmfulness of the error becomes even clearer:
    (1) The importance of the accusing witness's testimony in the
prosecution's case is impossible to overstate.  The district court
itself recognized this: Matthew was Ellsworth's only accuser and
the only witness to the alleged incidents.  Matthew's testimony was
the whole of the prosecution's case.
    (2) The testimony was not cumulative.  The district court
itself observed that there was no other testimony about Matthew's
sexual history.  Moreover, in light of the district court's
emphasis on the graphic details Matthew recounted, the source of
those details was extremely significant and not reached by other
testimony.
    (3) There was evidence corroborating Matthew's testimony, but
not on material points.  The district court thought the
corroboration to be material, but it was only marginally so.  The
other evidence was only "corroborating" to the extent that there
were occasions when Ellsworth took the boys on trips, took them
swimming, and stayed overnight at Colcord Cottage.  There was no
corroborating evidence of the abuse itself.
    (4) The extent of permitted cross-examination was very
limited.  Matthew was permitted to testify in an extremely general
way that he talked about "good touch" and "bad touch" in group
therapy.  This did not provide the jury with any information about
his background and prior abuse.
    (5) The overall strength of the prosecution's case was not
overwhelming.  It involved a sympathetic victim and a lurid
accusation, but, at bottom, it turns on the word of an unstable
witness - a child at that.

-25-

Accordingly, I would reject the district court's conclusion that the trial court's error in curtailing Ellsworth's cross-examination of Matthew was "harmless."  The district court should have been reversed on this claim.

##### 2.  Prior False Accusations

At trial, Ellsworth had proffered that Craig Klare's testimony would show that Matthew had made false accusations against students at Pine Haven, the school he attended after Spaulding.  Klare, one of Matthew's counselors, related that Matthew falsely accused other boys at the school of peeking at him in the shower, of peeking under his toilet, and of stealing toys that he himself had hidden.  The trial court ruled that Ellsworth could cross-examine Matthew about these incidents, but excluded Klare's testimony.  On cross-examination, Matthew denied that the incidents ever occurred.

The district court found that it was neither contrary to nor an unreasonable application of Supreme Court precedent for the New Hampshire state courts to exclude the testimony of Craig Klare, which would have rebutted Matthew's denials, under New Hampshire Rules of Evidence[8] 404(b) (barring introduction of evidence of propensity evidence) and 608(b) (regarding credibility evidence)

---

[8]The text of these rules is identical to that of the corresponding Federal Rules of Evidence.

The district court correctly noted that the Supreme Court has established that, at least under some circumstances, due process may require that a criminal defendant be permitted to introduce extrinsic impeachment evidence, even despite contrary evidentiary rules, in order to protect a weighty or critical defense interest. See, e.g., Crane v. Kentucky, 476 U.S. 683, 690-91 (1986) (holding that defendant's constitutional rights would be violated "if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence"). The Supreme Court delineates the doctrine as follows: a state may "establish rules excluding evidence from criminal trials" provided "they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (internal citations omitted). Accord Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (state evidentiary rule "not subject to proscription under Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental'"). Whether a principle of justice is "fundamental," according to the Supreme Court, is to be assessed historically, with reference to the common law. Egelhoff, 518 U.S. at 43-44.

The question here, then, is whether the trial court's decision to exclude the Klare testimony under Rules 404(b) and

-27-

608(b) was either contrary to, or an unreasonable application of, the rule established in Scheffer and Egelhoff: namely, that states may formulate their own evidentiary rules so long as those rules do not infringe on a weighty interest of the accused or offend a fundamental common-law principle of justice. The district court concluded that the trial court's exclusion of the Klare testimony did not rise to this standard. First, Ellsworth did not establish that there was a sufficiently weighty defense interest in the testimony to outweigh the evidentiary rules precluding its introduction. Second, in any case, the testimony appeared to be proffered only as a "general" attack on Matthew's credibility rather than one targeted at exposing potential bias or motivation to lie. This distinction is significant because the Supreme Court has held that the latter is a right entitled to the full protection of the Confrontation Clause whereas the former is not. See, e.g., Van Arsdall, 475 U.S. at 678-80; Davis v. Alaska, 415 U.S. 308, 316-17 (1974).

I find that the district court's application of Scheffer and Egelhoff to bar Klare's testimony, viewed in the context of the trial, was objectively unreasonable. To conclude, as the district court did, that Klare's proffered testimony did not bear on Matthew's potential bias or motive for lying is simply incorrect. At trial, defense counsel was permitted only to ask Matthew himself whether he had accused other children at Pine Haven of peeking at

him or stealing his toys - all of which Matthew flatly denied. Thus, the jury was left only with Matthew's unrebutted denials, and no evidence at all that the incidents in fact occurred – in some ways, an outcome far more prejudicial to Ellsworth than if counsel had not been allowed the cross-examination at all.

Accordingly, it is hard to conceive how Ellsworth's interest in impeaching Matthew's testimony could have been <u>more</u> weighty. The jury was left to draw the conclusion that there was no rebuttal to Matthew's denials. As to the issue of impeachment to show adverse motive or bias versus "general impeachment" of a witness's credibility, Klare's proffered testimony would have done much more than simply demonstrate Matthew's alleged "propensity to make false allegations about voyeurism and theft;" it would have demonstrated to the jury the kinds of circumstances that unsettled Matthew enough to evoke untrue accusations – that constituted his motivation and his own set of biases. I would therefore reverse the district court on this claim as well.

## II. Conclusion

I do not minimize or disregard the genuine suffering that Matthew has gone through in his short life. Nor do I conclude that he was not Ellsworth's victim. However, the mere fact that a defendant stands accused by a sympathetic victim of a repulsive crime does not justify depriving him of his constitutional right to a fair trial. I agree with the majority that at the very least

Ellsworth is entitled to an evidentiary hearing on remand. My preference, however, would be to reverse the district court on all three claims and remand with instructions to issue the writ of habeas corpus.