**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MEL LAMBERT VELARDE,

Defendant-Appellant.

No. 06-2126

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR No. 98-391 LH)**

---

Marc M. Lowry (Peter Schoenburg with him on the briefs), Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP, Albuquerque, New Mexico, for Defendant-Appellant.

J. Miles Hanisee, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **HARTZ**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Mel Velarde, who was convicted of sexually abusing a minor within Indian country, has filed a motion for a new trial under Rule 33(b) of the Federal Rules

of Criminal Procedure. He claims that the government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing evidence that L.V., the minor victim, falsely accused her school teacher and vice principal of inappropriate touching. Velarde argues that had the government disclosed this evidence, he could have impeached L.V. at trial, and the result of his trial would have been different.

The district court initially scheduled an evidentiary hearing at which Mr. Velarde would have been able to subpoena certain otherwise uncooperative witnesses and determine the nature of L.V.'s false accusations, if that is what they were, and establish whether the government was aware of them. Later, however, the court *sua sponte* cancelled the evidentiary hearing and denied Mr. Velarde's motion for a new trial on the ground that he had failed to introduce admissible evidence in support of his *Brady* claim. We hold that the district court erred by denying Mr. Verlarde's motion without granting an opportunity for discovery. We therefore **VACATE** the district court's order and **REMAND** for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

### 1. The Jury Trials and Rule 33 Motion

In March 1999, Mel Velarde was convicted by a jury of sexually abusing a minor within Indian country in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(A). L.V., the alleged minor victim, is the daughter of the woman Mr.

Velarde was dating at that time. No one else saw the alleged crime, and there was no corroborating medical evidence, so Mr. Velarde was convicted almost entirely on L.V.'s testimony. Mr. Velarde appealed his conviction and this Court reversed, holding that the district court erroneously admitted expert testimony concerning L.V.'s propensity for truthtelling. *United States v. Velarde*, 214 F.3d 1204, 1210–11 (10th Cir. 2000).

The government elected to retry Mr. Velarde. During his second trial, which occurred in September 2001, L.V. testified that Mr. Velarde took her from the top bunk of her brothers' bed (her younger brother was also sleeping in the top bunk, and her older brother was sleeping in the lower bunk) into the hallway and held her mouth shut while he "tried to stick his private part in [her] private part." R. Vol. III, at 255. Mr. Velarde's theory of the case was that L.V. fabricated those allegations to get back at him because when he spent the night at her mother's house he displaced L.V. from her mother's bed, L.V.'s usual sleeping place. This second trial resulted in another conviction, which this Court affirmed. *United States v. Velarde*, 88 F. App'x 339 (10th Cir. 2004).

In September 2004, three years after his second trial, Mr. Velarde filed a motion under Rule 33(b)(1) of the Federal Rules of Criminal Procedure seeking a new trial. He alleged that the government violated his *Brady* rights by failing to disclose before his second trial evidence that was favorable to him and material. Specifically, Mr. Velarde claimed that in the days immediately preceding his

second trial, L.V. falsely accused her school teacher and the school's vice principal of inappropriately touching her. He asserted that, because the case hinged largely on whether L.V.'s testimony was credible, evidence that L.V. falsely accused other men of inappropriate touching could have impeached L.V. and led to a different result.

Mr. Velarde learned of L.V.'s apparently false accusations from Phil Gallegos, another teacher at L.V.'s school who was L.V.'s teacher's union representative. Mr. Gallegos testified in an affidavit that he told FBI Agent Frank Chimits about L.V.'s false accusations before Velarde's second trial began. He also testified that he "reminded Agent Chimit[s] of his legal obligation to fully disclose this type of evidence." R. Vol. I, Doc. 334, Ex. A., at 2. The government countered with Agent Chimits's affidavit testimony that he "did not at any time have a conversation with [Mr. Gallegos] of the nature described in Defendant Velarde's Motion," nor did he know of L.V.'s second accusations from any other source prior to the second trial. R. Vol. I, Doc. 314, Ex. 1, at 2.

### 2. The District Court's Response to Mr. Velarde's *Brady* Motion

Faced with the contradictory Gallegos and Chimits affidavits, the district court set an evidentiary hearing. R. Vol. I, Doc. 349. The order stated that "[t]he Court's initial task is to determine whether a conversation with the content described in the Gallegos affidavit, did or did not occur." *Id.* at 4. The court ordered the parties to "be prepared to present substantive evidence as to the

specific content of a conversation between Gallegos and Chimits." *Id.* at 5. The court also ordered Mr. Velarde to present at the hearing "the substantive, strong, exculpatory, *admissible* evidence that he intends to present at trial, *i.e.*, the 'new evidence' on which he has based his motion." *Id.* at 7.

Soon after the district court issued this order, Mr. Velarde moved the court to issue subpoenas under Fed. R. Crim. P. 17(b) to compel the attendance of Gallegos, L.V., and L.V.'s principal, vice principal, and teacher. R. Vol. I, Doc. 350, at 1. These witnesses were to be the source of the "substantive, strong, exculpatory, *admissible*" new evidence that the court ordered him to introduce. Mr. Velarde contended that because the allegations implicated the school officials' fitness for continued employment, subpoena power was necessary to compel their cooperation.

Approximately one week after Mr. Velarde sought these subpoenas, and before the court took any action on his motion, the district court *sua sponte* vacated the evidentiary hearing. R. Vol. I, Doc. 351, at 1. The court stated that "[r]ather than proceed with a costly and time-consuming evidentiary hearing, as well as potentially with at least a portion of a new trial, the Court determines that it is prudent, at this juncture, to determine the ultimate admissibility of such evidence, if established." *Id.* at 1–2. The court ordered the parties to brief whether the evidence would be admissible under Fed. R. Evid. 412 and "to appear

for legal arguments," *id.* at 1, at "a strictly legal hearing" after the briefing was complete, *id.* at 3.

The parties submitted briefs as directed and appeared for the "strictly legal hearing" at the appointed time. But when the hearing began, the district judge immediately asked defense counsel to give "a statement of exactly what the new evidence is that the defendant wishes to or claims to have found that justifies a new trial." R. Vol. VI, at 2. Defense counsel offered what the district court later characterized as a "proffer," R. Vol. I, Doc. 357, at 4, 6, based on conversations a paid defense investigator had with L.V.'s teacher and vice principal.

According to defense counsel, L.V.'s teacher told the investigator that he was summoned to the principal's office in the week after September 11, 2001, where L.V. and her mother were present. He was asked, "What did you do to [L.V.], if [you] touched her inappropriately." R. Vol. VI, at 5. He denied the charge. The principal then asked L.V. why she did not bring the incident to the attention of the vice principal. L.V. responded that she did not like the vice principal "because he touches me funny too." *Id.* at 5–6. Her teacher was told to leave the office, and he "never knew what happened afterwards." *Id.* at 6.

The investigator's conversations with the vice principal largely concerned the school's investigation into L.V.'s charges. The investigation involved the vice principal, a school counselor, and "others." *Id.* at 6–7. Initially, the vice principal discussed the school's investigation with the defense investigator. *Id.* at

-6-

6. He told the investigator "that nothing came of it, and that they didn't think [L.V.] was telling the truth." *Id.* at 6. Later, however, he clammed up, stating that "he couldn't recall." *Id.* at 7. He provided no further information to the investigator. And the school counselor who the vice principal stated "would have handled this" told the defense investigator that "she had no recall of the investigation." *Id.* at 9.

The defense subpoenaed the school records, but according to defense counsel, "there is [sic] no records to be had" because they are purged on an annual basis. *Id.* at 7.

Defense counsel informed the district court that the defense wished to present the testimony of L.V.'s teacher and the defense investigator, and wished to subpoena the vice principal and the principal, Bill Reese. He explained to the court that "the underlying allegations of inappropriate touching are admissible, as well as Mr. Gallegos' testimony that he, in fact, informed Agent Chimits about the allegations." *Id.* at 8. In further discussion with the district court, defense counsel stated that the admissible evidence the defense would present relates to "[the teacher's] comments, Mr. Reese's discussion with the mother, and the victim, and [the vice principal]," as well as "the investigation, if any, [that] was done by [the vice principal]." *Id.* at 8–9.

The district court attempted to pin down the defense regarding the exact nature of L.V.'s allegations against her teacher:

MR. LOWRY: [L.V.'s teacher]—and this is in [the investigator's] report—said that when the principal, Bill Reese, asked her, she responded—[the teacher] recalls LV saying, "Because he scares me," referring to [the vice principal].

And then, when Mr. Reese asked, "Why does he scare you," she added, "He touches me."

THE COURT: Well, the first time you stated that you said, "He touches me funny."

MR. LOWRY: Well, I apologize. This is what I have in actual quotes from—

THE COURT: "He touches me."

MR. LOWRY: "He touches me."

THE COURT: And you don't know where?

MR. LOWRY: No, Your Honor. But this was [L.V.]'s explanation to the principal about why she was afraid to go to the vice-principal to report the allegations against [her teacher].

*    *    *    *    *

THE COURT: [What is L.V.'s teacher's] testimony going to be? And that's what you have to tell me. And what you've told me, the way I understand it, was that it was inappropriate touching.

MR. LOWRY: [The teacher] wasn't privy to the conversation that took place in the principal's office before he arrived. What [the teacher] knows was that he was summoned into that office.

THE COURT: Well, who is going to testify what kind of touching it was, and what will that testimony be? What I've understood from you—and that's what I asked you for—and what I have understood from you is that [L.V.'s teacher] touched her inappropriately.

MR. LOWRY: And I think that we have to make that assumption, given what we know. And I think, if we want [a] more particularized description, it would take—

THE COURT: If you're going to give me any more particular a description, it's got to be now. This case was filed in 1998, and it's now [2006], and I'm going to get rid of this case one way or the other, okay? So you have to tell me exactly what—how the touching was described, and who is going to say that.

*Id.* at 9–10, 19–20.

Defense counsel explained to the district court why it was necessary to subpoena witnesses in order to obtain the details regarding L.V.'s accusation:

MR. LOWRY: I want to step back for just a second and address the underlying allegations, and you wanted more specificity, and I wholeheartedly understand why. But I want to address the context within which we're talking about—we're talking about school officials, teachers, in an environment that they deal directly on a day-to-day basis with children. And these individuals, to say that they are concerned is understated. But an allegation of sexual touching is sort of a death knell to a career for a teacher—

THE COURT: I understand that.

MR. LOWRY: —or a school official. At the onset, we're dealing with a huge psychological barrier for people to even discuss with us the nature of touching, as it were. So I'm trying to be fully candid with Your Honor, but I also want the Court to be well aware of the circumstance that we're dealing with. And it makes it exceedingly difficult to get, you know, highly descriptive, especially self—perhaps self-discriminating descriptions of touching. So I just wanted to place that in context for the Court.

*Id.* at 32–33.

Following the hearing, the district court issued a written order denying Mr. Velarde's Rule 33 motion on the ground that "the Defendant's 'newly discovered evidence' is not admissible." R. Vol. I, Doc. 357, at 6. First, the district court concluded that the Gallegos affidavit did not contain reliable or admissible

-9-

evidence, largely because it was "based on hearsay." *Id.* Nor did "the proffer by defense counsel at the March 15 hearing" provide "any admissible evidence" that L.V. had falsely accused her teacher and vice principal of inappropriate touching. *Id.* The court explained:

> There is no proof before the Court as to whether L.V. indeed accused [her teacher] of an inappropriate touching. What is in the record is that [her teacher] denied touching her inappropriately. While there is evidence that L.V. states that [her vice principal] "touches me," there is no evidence that the accusation is false. Further, there is no proof before the Court as to whether or not L.V. accused [her teacher] and/or [her vice principal] of inappropriate touching of a sexual nature.

*Id.* at 7.

Second, the district court concluded that "[e]ven if Defendant's evidence were more complete and stronger," it lacked probative value for Mr. Velarde's defense "because the circumstances of the two incidents differ so substantially." *Id.* at 7. Not only did the alleged incident at school occur two to three years after the incident charged in the indictment, but "these alleged accusations against [L.V.'s teacher] and [vice principal] involved unspecified types of touching that have yet to be described to the Court. There is certainly no proof that these other alleged incidents were of a sexual nature." *Id.* The court observed that "[t]he alleged [teacher/vice principal] incidents could have consisted of a touching such as shove or other minor assault." *Id.* at 7.

The court then analyzed the proffered evidence under Federal Rules of Evidence 608(b) and 403 and the Confrontation Clause. Extrinsic evidence was

not admissible under Rule 608(b), according to the court, because it involved a collateral mater: "The lack of similarity of the events surrounding the prior and present allegations, and the slight degree of probative value of the proffered evidence on issues that are *not* collateral, such as L.V.'s credibility, bias, interest and motives, prompt the Court to exercise its discretion under Rule 608(b) and find the proffered evidence is inadmissible." *Id.* at 8–9.  The court also found that "the relevance and probative value of this evidence is extremely slight and the danger of confusion and prejudice is great," leading the court to exclude it under Rule 403.  *Id.* at 9.  Finally, the court rejected the defendant's argument that he has a right to admission of this evidence under the Confrontation Clause on the ground that it "is too attenuated in terms of what type of touching and in terms of time, to be probative," and because "there is no proof before the Court that the statement 'he touches me' is false." *Id.* at 10.  The court concluded:

> Defendant's evidence falls far short of showing a scheme of fabrication by L.V.  Certainly this evidence is not relevant to show false accusations of a similar nature, with the same intent, motivation and plan or to establish possible biases, prejudices, or ulterior motive of L.V., which are "always relevant as discrediting the witness and affecting the weight of [her] testimony." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

*Id.* at 10 (alteration in original).

Mr. Velarde now appeals from that order.

-11-

**DISCUSSION**

A defendant who seeks a new trial under Rule 33 based on an alleged *Brady* violation must show that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *United States v. Quintanilla*, 193 F.3d 1139, 1149 & n.10 (10th Cir. 1999). The government has not contested that Mr. Velarde would satisfy the second element, so we limit our inquiry to the first and third elements. We review *de novo* the district court's ruling on Mr. Velarde's Rule 33 motion because it alleges a *Brady* violation. *United States v. Pearl*, 324 F.3d 1210, 1215 (10th Cir. 2003).

**A. Did the prosecution suppress potentially exculpatory evidence?**

"Due process mandates disclosure by the prosecution of all evidence that favors the defendant and is 'material either to guilt or punishment.'" *Robinson*, 39 F.3d at 1118 (quoting *Brady*, 373 U.S. at 87). This duty to disclose extends to prosecutors, police, and other government investigators. *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995). Accordingly, a defendant may base a *Brady* claim on a government investigator's failure to disclose evidence material to guilt or punishment, even when the prosecutor personally did not know of that evidence. *See id.*

Mr. Gallegos and Agent Chimits presented conflicting evidence to the district court regarding whether the prosecution suppressed potentially material evidence. The district court did not hold an evidentiary hearing to resolve this

-12-

conflict, but instead ruled that even if the government suppressed the information, Mr. Velarde is not entitled to a new trial because the suppressed evidence would not have been admissible. For purposes of this appeal, therefore, we will assume (as the district court apparently did) that the defendant is correct that Mr. Gallegos informed the government regarding L.V.'s supposed false accusations and that the government failed to provide this information to the defense. This question—whether suppression actually occurred—is, of course, open on remand. If, on remand, the district court concludes after an evidentiary hearing that Gallegos did not make the alleged statement to Chimits, there is no need for further proceedings to determine the materiality of the evidence.

**B. Was the petitioner entitled to discovery?**

Evidence is "material" under *Brady* "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *United States v. Robinson*, 39 F.3d 1115, 1118 (10th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (Blackmun, J.)). The district court denied Mr. Velarde's Rule 33 motion on the ground that the evidence regarding L.V.'s supposed false accusations was neither admissible nor material. The court reached that conclusion, however, without considering whether defense counsel should be given leave to conduct discovery into the facts supporting Mr. Gallegos's

allegations. The case law in this area, as we discuss below, is obscure and apparently not well understood. The district court's course of action—and defense counsel's failure to point out the correct course more precisely—is therefore understandable. Nevertheless, we conclude that the court erred by failing to grant leave to conduct discovery.

This case arises at the intersection of evidentiary hearings and fact discovery in the Rule 33 context. Our precedent speaks more frequently to the former and makes clear that a district court is "not required to hold" an evidentiary hearing before resolving a motion for a new trial, *United States v. Sutton*, 767 F.2d 726, 729 (10th Cir. 1985), particularly "when the record is complete or the petitioner raised only legal claims that can be resolved without the taking of additional evidence," *Lawrence v. Lensing*, 42 F.3d 255, 259 (5th Cir. 1994) (internal quotation marks omitted), *cited in Pearl*, 324 F.3d at 1215. This is because "[t]he purpose of an evidentiary hearing is to resolve conflicting evidence." *Anderson v. Attorney Gen.*, 425 F.3d 853, 860 (10th Cir. 2005). As we stated in *Anderson,* "'[w]hether the record raises a genuine factual issue [requiring an evidentiary hearing in a § 2254 proceeding] is decided by the same standards used to decide a Rule 56 motion for summary judgment.'" *Id.* (quoting *East v. Scott*, 55 F.3d 996, 1002 (5th Cir. 1995)) (brackets in original); *see Blackledge v. Allison*, 431 U.S. 63, 80 (1977). Thus, the court is required to conduct the evidentiary hearing only if the admissible evidence presented by

petitioner, if accepted as true, would warrant relief as a matter of law. Mr. Velarde does not satisfy that standard here because, by his own admission, he was unable to procure the necessary evidence from the school officials without judicial compulsion.

In limited circumstances, however, a defendant who is unable to submit evidence to the court sufficient to warrant an evidentiary hearing, is able to make a showing that further investigation under the court's subpoena power very likely would lead to the discovery of such evidence. In that rare case, what should the defendant do?

The answer, we think, is to request leave to conduct discovery. Discovery is authorized in habeas corpus cases, an analogous post-conviction proceeding. *See Blackledge*, 431 U.S. at 81–82, *citing* Rule 6 of the Rules Governing Habeas Corpus. Courts have authority to allow discovery based on the All Writs Act, 28 U.S.C. § 1651, a "legislatively approved source of procedural instruments designed to achieve the rational ends of the law" that "courts may rely upon . . . in issuing orders appropriate to assist them in conducting factual inquiries." *Harris v. Nelson*, 394 U.S. 286, 299 (1969) (internal quotation marks and citations omitted). According to the Supreme Court, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is" entitled to a new trial, "it is the duty of the court to provide the necessary facilities and procedures for an

-15-

adequate inquiry." *Id.*; *see also United States v. Wolfson*, 413 F.2d 804, 808 (2d

Cir. 1969) (in dictum, suggesting that *Harris* applies to Rule 33 motions); 26

James Wm. Moore et al., Moore's Federal Practice § 633.21[3], at 633-50 (3d ed.

2006). In fulfilling this duty, a district court has broad discretion to fashion

discovery mechanisms suitable to the case before it. We construe Mr. Velarde's

request for the issuance of subpoenas in connection with the evidentiary hearing

in this case as a request for discovery.[1]

Based on the record here, we conclude that Mr. Velarde's case fits in the

rare class of cases described above. Defense counsel proffered affidavit evidence

from Mr. Gallegos that, just a few days before Mr. Velarde's trial—at which L.V.

accused Velarde of inappropriate touching—L.V. accused her teacher and vice

principal of some (unspecified) form of inappropriate touching, that the school

investigated the allegations, and that the investigation concluded that L.V. was

lying. Defense counsel could not identify the precise nature of the "touching"

because L.V.'s teacher was not informed of what he was accused; the vice

principal, after initially discussing the school investigation with the defense,

claimed not to remember any more; the principal would not talk to the defense;

and the school records of the investigation had been destroyed. Defense counsel

---

[1]Our decision to construe Mr. Velarde's motion as a request for discovery is based on the particular context of this litigation, including the absence in this Circuit of an established practice of discovery in cases of this sort. In future cases, depending on the particular circumstances, a movant's failure to request discovery may constitute a waiver.

explained that further details about L.V.'s accusation and evidence of its falsity were known only to school officials who, for professional reasons, would discuss the matter only if compelled by subpoena power.

If the evidence proffered by Mr. Velarde's counsel is accurate, it is more likely than not that L.V. in fact made allegations of inappropriate touching against her teacher and principal, and that the school investigated these allegations and found them false. Discovery in this case would therefore not be a mere fishing expedition based on the defendant's mere hopes of finding exculpatory evidence. Rather, there is a firm evidentiary basis for believing such evidence likely exists.

## C. Was the evidence material under *Brady*?

The question remains whether the exculpatory evidence would be material under *Brady*. The district court ruled as a matter of law that any evidence of alleged touching by school officials—the specifics of which were still unascertained—would be inadmissible under Rules 608(b) and 403 of the Federal Rules of Evidence. To a great extent, that ruling was reached on the basis of the evidence actually submitted by defense counsel, as opposed to the evidence that could be elicited through discovery. *See* R. Vol. I, Doc. 357, at 7 ("There is no proof before the Court as to whether L.V. indeed accused [her teacher] of inappropriate touching. What is in the record is that [he] denied touching her inappropriately. . . . Further, there is no proof before the Court as to whether or not L.V. accused [her teacher] and/or [her vice principal] of inappropriate

-17-

touching of a sexual nature.")  When determining whether to conduct discovery, however, the issue cannot be what the defense has already proved, but what the defense might reasonably be able to prove if discovery is conducted.

The government argues that even if Mr. Velarde were able to produce evidence that L.V. made false accusations of inappropriate touching against her teacher and vice principal, such evidence would be inadmissible at trial and its suppression therefore would not be a violation of *Brady*.  In general, the Federal Rules of Evidence do not permit the introduction of evidence regarding collateral matters solely for the purpose of impeaching the credibility of a witness.  Rule 608(b) prohibits "prov[ing] by extrinsic evidence" a "specific instance[] of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness."  Fed. R. Evid. 608(b).  *See White v. Coplan*, 399 F.3d 18, 26 (1st Cir. 2005) (on habeas, concluding that prisoner was entitled to cross-examine complainants regarding prior accusations but noting that court is "not endorsing any open-ended constitutional right to offer extrinsic evidence"); *United States v. Bartlett*, 856 F.2d 1071, 1089 (8th Cir. 1988) (exclusion of extrinsic evidence of prior allegedly false allegation of rape is constitutional and proper under Rules 412 and 608(b)); *Benn v. Greiner*, 294 F. Supp. 2d 354, 365 (E.D.N.Y. 2003) (Weinstein, J.) (state court's preclusion of prisoner's cross-examination of victim regarding prior allegations of sexual abuse entitled him to habeas relief, but the state court "could . . . have precluded further inquiry or

extrinsic proof in order to avoid complicating the trial"), *rev'd*, 402 F.3d 100 (2d Cir. 2005) (holding error was harmless). The reason for excluding such extrinsic evidence is to avoid mini-trials that may consume a disproportionate amount of time and confuse the issues. As the First Circuit explained in *Ellsworth v. Warden*, 333 F.3d 1, 8 (1st Cir. 2003) (en banc), "[t]he theory, simple enough, is that evidence about lies not directly relevant to the episode at hand could carry courts into an endless parade of distracting, time-consuming inquiries."

In *United States v. Magallanez*, 408 F.3d 672 (10th Cir. 2005), on which Mr. Velarde relies, we held that the government was properly allowed to call a rebuttal witness to contradict a false statement made by a witness on direct examination. Accordingly, if, on direct examination, L.V. were to testify that she had never made a false accusation of sexual abuse, *Magallanez* would support the introduction of the evidence (assuming it exists) regarding her false accusations against her teacher and vice principal. If, however, the issue did not arise on direct, the defense would be permitted to cross-examine her regarding the supposed false accusations at school, but *Magallanez* would not permit Mr. Velarde to introduce extrinsic evidence regarding such accusations.

To be sure, some authority supports admission of such extrinsic evidence, but it has not been accepted by this Circuit. One court in a habeas proceeding under 28 U.S.C. § 2254 noted that the state court might allow such testimony, at least in some limited circumstances. *Ellsworth*, 333 F.3d at 4. In that case, the

defendant, who was accused of sexually molesting a boy at a residential treatment center, sought to introduce evidence that the boy had falsely accused caretakers at a prior care center of sexually molesting him. The First Circuit noted that New Hampshire allows extrinsic evidence of a prior false accusation of sexual assault if the prior accusation is similar to the new accusation and the defendant can show that the prior accusation was "demonstrably false." *Id.* (internal quotation marks omitted). And a federal district court, in an opinion affirmed in an unpublished circuit decision, allowed extrinsic evidence of three prior allegations that the complainant had admitted in writing to be false. *See United States v. Stamper*, 766 F. Supp. 1396, 1406 (W.D.N.C. 1991), *aff'd sub nom. In re One Female Juvenile Victim*, 959 F.2d 231 (4th Cir. 1992) (unpublished decision) (appeal by witness only).[2]

Moreover, as Mr. Velarde argues, there may be circumstances in which the Confrontation Clause would entitle a criminal defendant to introduce highly probative exculpatory extrinsic evidence. But if such constitutional exceptions exist, they are narrow. *See Holmes v. South Carolina*, 126 S. Ct. 1727, 1732 (2006) ("While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit

---

[2]In that case, the government, relying on Fed. R. Evid. 412, had conceded that the evidence would otherwise be admissible under Fed. R. Evid. 404(b) and 608. *See* 766 F. Supp. at 1406.

trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of 'harassment, prejudice, or confusion of the issues." (citations, ellipsis, brackets, and internal quotation marks omitted)); *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Ellsworth*, 333 F.3d at 6 ("[C]onfrontation clause objection is pretty well limited to extreme cases where the state restriction is patently unreasonable . . . ."); *United States v. Gomes*, 177 F.3d 76, 82 (1st Cir. 1999) ("[Confrontation Clause] challenge is tenable only where the restriction is manifestly unreasonable or overbroad."). Neither this Court nor the Supreme Court has held that a defendant has a constitutional right to introduce extrinsic evidence under circumstances analogous to these.

But we need not definitively resolve whether extrinsic evidence of L.V.'s false accusations (assuming it exists and assuming it was withheld by the government) would be admissible on retrial. Even assuming such evidence would not be admissible, discovery could have led to facts that the defense could use to effectively cross-examine L.V. about her truthfulness. While Rule 608(b) makes this type of cross-examination subject to the district court's discretion, it may well be an abuse of discretion not to allow such cross-examination in a criminal case where the vast majority of inculpatory evidence is the alleged victim's

testimony.  *See White*, 399 F.3d at 26 (on habeas, concluding that prisoner was entitled to cross-examine complainants regarding prior accusations); Benn, 294 F. Supp. 2d at 365 (state court's preclusion of prisoner's cross-examination of victim regarding prior allegations of sexual abuse entitled him to habeas relief, but the state court "could . . . have precluded further inquiry or extrinsic proof in order to avoid complicating the trial"), *rev'd*, 402 F.3d 100 (2d Cir. 2005) (holding error was harmless); *see also Mathis v. Berghuis*, 90 F. App'x 101, 107 (6th Cir. 2004) (unpublished decision) (affirming conditional grant of habeas relief to state prisoner based on possibility of cross-examination of complainant regarding prior rape allegations even though the applicable rule of evidence "does not generally permit" extrinsic evidence on the issue).

We believe those holdings are applicable here.  L.V.'s testimony was virtually the only evidence of Mr. Velarde's guilt, and the fact (if it is a fact) that near the time of trial she made similar false accusations against two other men creates a reasonable probability that, had the defense known of this evidence, the result of the proceeding would have been different.  If, under the circumstances, it would have been an abuse of discretion for the district court to preclude the defense from cross-examining L.V. about these prior false accusations, it is a *Brady* violation for the government to withhold from the defense the information on which it would conduct such a cross-examination.

We reiterate, however, that if the court on remand were to conduct an evidentiary hearing to resolve the conflict in testimony between FBI Agent Chimits and Mr. Gallegos, and conclude that the government did not suppress the information regarding L.V.'s supposed false accusations, the *Brady* question could be resolved on the first prong of the analysis, without need for discovery.

## CONCLUSION

We VACATE the district court's order denying Mr. Velarde's Rule 33 motion and REMAND for proceedings consistent with the *Brady* analysis outlined above. We do not hold that Mr. Velarde is entitled to a new trial. We hold only that, on this record, the district court erred in holding that the suppressed evidence was immaterial without first either resolving the disputed question regarding whether the government suppressed information regarding L.V.'s supposed false accusations at school or allowing discovery to determine the nature and veracity of L.V.'s supposed accusations against her teacher and vice principal. The district court has broad discretion to determine the type and manner of any discovery.