**UNITED STATES COURT OF APPEALS**

August 6, 2008

**TENTH CIRCUIT**

ANTHONY T. ARMIJO,

          Petitioner - Appellant,

v.

GEORGE TAPIA, Warden; THE
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

          Respondent - Appellee.

No. 08-2095

(D. New Mexico)

(1:07-cv-01066-JCH-WPL)

**ORDER**

Before **HENRY**, Chief Judge, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Anthony T. Armijo, a state prisoner proceeding pro se, seeks a certificate of appealability (COA) to appeal the district court's dismissal of his petition for a writ of habeas corpus petition pursuant to 28 U.S.C. § 2254. Because Mr. Armijo has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we deny his application for a COA and dismiss this matter.

## I. BACKGROUND

In March 2002, Mr. Armijo abducted his girlfriend, took her to his apartment, and barricaded the door. Several hours later, police broke into the apartment, where they found Mr. Armijo and his girlfriend, who had sustained

several lacerations.  A bloody knife lay near his bed.  Mr. Armijo was subsequently charged with several crimes relating to the incident.

In the months leading up to his trial, Mr. Armijo, through counsel, filed a motion for discovery, in which he requested several items, including the results of any DNA analysis on the knife found in his apartment.  When the trial court conducted a discovery hearing, the prosecution informed the court that no analysis could be undertaken because the state did not have a DNA sample to match against the blood found on the knife.  Mr. Armijo indicated that he would be willing to provide a blood sample.  Rather than expressly ordering DNA testing, the court suggested that the parties arrange for Mr. Armijo to give a sample as soon as possible.  However, Mr. Armijo never provided a blood sample, and the state never performed the DNA testing.

Prior to voir dire, Mr. Armijo's attorney reminded the court that Mr. Armijo had requested that the state perform DNA analysis.  He informed the court that Mr. Armijo's theory of the case was that the blood on the knife was his, and not his girlfriend's, and he believed a DNA test showing that his blood was on the knife would provide critical support for his theory.  Through counsel, Mr. Armijo requested a continuance so that the state could perform DNA analysis.  The court denied the request.

During the trial, the court granted a motion for Mr. Armijo's attorney to withdraw.  Mr. Armijo had filed a disciplinary complaint against the attorney and,

according to the attorney, was not cooperative in preparation for trial. Prior to trial, Mr. Armijo had repeatedly expressed a desire to represent himself, and at times the court had permitted him to do so, as several court-appointed attorneys withdrew in light of conflicts with him. Proceeding pro se, Mr. Armijo argued to the jury that his blood, and not his girlfriend's, was on the knife. One witness for the prosecution, a detective, testified that Mr. Armijo could have obtained DNA analysis without the aid of the prosecution. In closing, the prosecution argued against Mr. Armijo's theory of the case by reminding the jury that Mr. Armijo could have secured DNA analysis without the state's assistance, but had not done so.

The jury found Mr. Armijo guilty of several crimes including kidnaping, attempted criminal sexual penetration, and aggravated battery, and the state district court sentenced him to fifteen years' imprisonment. After unsuccessfully appealing his conviction to the Court of Appeals of the State of New Mexico (CANM), Mr. Armijo timely filed for state post conviction relief. In his state habeas petition, Mr. Armijo raised several claims. Relevant to this matter, he contended that the district court erred in refusing to require the prosecution to conduct DNA analysis of the blood on the knife found near his bed. Mr. Armijo also alleged prosecutorial misconduct, contending that prosecutors defied a court order by failing to arrange for DNA analysis and then compounded the misconduct by suggesting to the jury during closing arguments that his theory of

the case was not credible, in part because he had failed to secure DNA analysis on his own. The CANM denied Mr. Armijo's petition.

Mr. Armijo then filed a habeas petition in federal district court, pursuant to 28 U.S.C. § 2254. Before the district court, Mr. Armijo argued that his right to due process under the United States Constitution was violated by the prosecution's failure to conduct DNA testing. In particular, he urged that under *Brady v. Maryland*, 373 U.S. 83 (1963), the government was obligated to conduct the analysis and disclose the results to him prior to trial. Additionally, he reiterated his prior claims of prosecutorial misconduct. In accordance with the recommendation of a magistrate judge, who determined that Mr. Armijo's claim "lack[ed] merit," Rec. doc. 26, at 1, the district court dismissed Mr. Armijo's petition with prejudice. Mr. Armijo then sought a COA, which the district court denied.

## II. DISCUSSION

Mr. Armijo seeks a COA with respect to three issues. He contends that (1) the state's failure to assist him in performing DNA testing amounted to a *Brady* violation as well as (2) a violation of his right to compulsory process under the Sixth Amendment. He urges that (3) state prosecutors committed misconduct in violation of his right to due process under the Fourteenth Amendment by failing to help him obtain DNA analysis and then suggesting to the jury that the responsibility to perform testing was his, and not theirs.

-4-

Mr. Armijo must obtain a COA in order to challenge the district court's dismissal of his habeas petition. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). As he is proceeding pro se, we have construed Mr. Armijo's pleadings liberally. *Cannon v. Mullin*, 383 F.3d 1152, 1160 (10th Cir. 2004). He is not entitled to a COA, however, unless he can make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Specifically, Mr. Armijo must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Id.* at 338.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs our consideration of the merits of Mr. Armijo's claims. Under AEDPA, a federal court may grant habeas relief if (1) the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1), (2). Under AEDPA, a state court decision is not contrary to clearly established federal law unless "most

-5-

reasonable jurists exercising their independent judgment would conclude that the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006), *cert. denied* 127 S. Ct. 1819 (2007). Implicit in this observation is the axiom that a principle of federal law may not provide a basis for habeas relief under § 2254 unless it was "clearly established by the Supreme Court at the time of the state court judgment." *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004). Moreover, federal courts presume that factual findings of the state court are correct. This presumption may be rebutted only by clear and convincing evidence from the petitioner. *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008).

In light of these AEDPA standards, Mr. Armijo is not entitled to a COA unless he can demonstrate that reasonable jurists could debate whether the CANM's decision was "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Maynard*, 468 F.3d at 671 (quoting *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006)) (internal quotation marks omitted). For substantially the same reasons as the district court, which adopted the thorough recommendation of the magistrate judge in this case, we conclude that Mr. Armijo has not met this burden with respect to any of his claims.

1.    *Brady*

Mr. Armijo's *Brady* argument relies on the incorrect assumption that the

-6-

state had an obligation under the Constitution to provide DNA analysis. As the well-reasoned recommendation of the magistrate judge observed, the Supreme Court has explained that "the police do not have a constitutional duty to perform any particular tests." *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988); *see* Rec. doc. 26, at 8 (Magistrate's Recommendation). Under *Brady* and its progeny, a due process violation occurs when "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *United States v. Velarde*, 485 F.3d 553, 558 (10th Cir. 2007) (internal quotation marks omitted). The constitutional duty of prosecutors to disclose evidence to the accused extends to material exculpatory evidence in the hands of police and other government investigators. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). However, the *Brady* line of cases does not stand for the proposition that the prosecution must perform any forensic tests that may inure to the benefit of the accused. *See United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) ("*Brady* . . . does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case."). Thus, under Supreme Court caselaw the state was under no obligation to provide DNA testing to Mr. Armijo.

2.    Compulsory Process

Mr. Armijo argues that the district court ignored his "obvious 6th amendment [sic] claim," Aplt's Br. at 4, and urges that we grant a COA with

respect to that claim.  Specifically, he contends that the Sixth Amendment's guarantee that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor," U.S. CONST. amend. VI, obligated the state to provide DNA testing for his defense because "DNA testing could have been tantamount to [an] eyewitness."  Aplt's Br. at 3. To begin with, we do not agree with Mr. Armijo's contention that he raised this argument before the district court and, therefore, we need not consider his argument here.  *See United States v. Windrix*, 405 F.3d 1146, 1156 (10th Cir. 2005) (observing that, as a general rule, we will not consider an argument not raised below).  Moreover, Mr. Armijo cites no authority in support of his Sixth Amendment claim, and we have found none.  Thus, the Sixth Amendment's Compulsory Process clause does not afford a basis for habeas relief in this case.

3.      Prosecutorial Misconduct

Finally, Mr. Armijo's prosecutorial misconduct claim hinges on a factual assertion that was not accepted by the CANM or the district court: that the prosecution defied a court order by failing to provide DNA analysis.  Rather than embracing this claim, the CANM explicitly assumed that the trial court had "fail[ed] to order the State to conduct DNA testing."  Rec. doc. 1-2, at 10. Similarly, the magistrate judge's recommendation observed, "It is not clear that the trial judge actually ordered the prosecution to conduct the DNA analysis." Rec. doc. 26, at 9. After reviewing of the transcripts of relevant proceedings, we

conclude that, at most, the trial judge suggested that the prosecution assist Mr. Armijo in collecting a DNA sample that might be used for testing. Because Mr. Armijo has not demonstrated that the trial court ordered testing, he cannot show that prosecutors defied a court order by failing to provide it. More importantly, Mr. Armijo has made no effort to demonstrate that any alleged misconduct, including the prosecution's comments in closing, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (explaining the circumstances under which prosecutorial misconduct may violate a defendant's due process rights and serve as grounds for habeas relief). As such, Mr. Armijo has not demonstrated that reasonable jurists would debate whether his prosecutorial misconduct claim could be grounds for habeas relief.

## III. CONCLUSION

Accordingly, we DENY Mr. Armijo's application for a COA and DISMISS this matter.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

-9-