FILED
United States Court of Appeals
Tenth Circuit

April 13, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

MANUEL ORTIZ,

      Defendant–Appellant.

No. 10-2154
(D.C. No. 1:08-CR-01539)
(D. N.M.)

## ORDER GRANTING APPELLEE'S MOTION TO AMEND ORDER AND JUDGMENT

Before **LUCERO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

This matter is before the court on the motion of the United States to amend our original judgment. The motion is **GRANTED**. The original order and judgment is withdrawn and an amended order and judgment is attached to this order.

Entered for the Court

Carlos Lucero
Circuit Judge

FILED
United States Court of Appeals
Tenth Circuit

March 25, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

MANUEL ORTIZ,

Defendant–Appellant.

No. 10-2154
(D.C. No. 1:08-CR-01539-MV-2)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

Manuel Ortiz was found guilty of possession with intent to distribute five

kilograms or more of cocaine, and aiding and abetting, 21 U.S.C. § 841(a)(1),

(b)(1)(A), and 18 U.S.C. § 2, possession with intent to distribute ecstasy, and

aiding and abetting, 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2, and

conspiracy to possess with intent to distribute the same controlled substances,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

21 U.S.C. § 846. Following trial, the district court granted co-defendant Felipe Canela's motion for acquittal on all counts, granted Ortiz's motion for acquittal only as to the conspiracy count, and denied Ortiz's motion for new trial. Ortiz now appeals, arguing that the evidence was insufficient to support his conviction on the two possession-with-intent counts, and that his motion for new trial should have been granted to remedy the government's violation of Brady v. Maryland, 373 U.S. 83 (1963), and its prosecutorial misconduct. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

We review the sufficiency of the evidence de novo, viewing "the facts in evidence in the light most favorable to the government." United States v. Sells, 477 F.3d 1226, 1235 (10th Cir. 2007) (quotation omitted). But "our role is limited to determining whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom. " Id. (quotation omitted). Consistent with our standard of review, we summarize the facts in the light most favorable to the Government.

Ortiz owned and operated a refrigerated tractor trailer. In June 2008, he obtained a job transporting produce from a shipping facility in Guadalupe, California, run by Apio, Inc. The load was designated for the East Coast. Given

the distance and perishable cargo, the job required a two-man team, to allow for extended travel each day and compliance with regulations of truck drivers' hours. Ortiz recruited Canela to share the driving duties. On June 16, 2008, while Canela slept in the cab, Ortiz oversaw the loading of the trailer and then drove out of the Apio facility early in the morning of June 17.

Canela arrived in Phoenix, Arizona, around 1:00 p.m., at which point, regulations required he spend ten hours off-duty before driving again. Although Ortiz was free to begin an eleven-hour shift, he did not. Instead, the pair stayed in Phoenix for some nineteen hours. Canela testified that they spent the time watching movies in the cab through the afternoon, watching a basketball game on television in the truck stop lounge during the evening, and sleeping overnight in the cab.

They fueled up and drove out of Phoenix on Interstate 40 the next morning. With Canela driving, they approached the port of entry for Gallup, New Mexico, where they were pulled over for an inspection. Problems with their logbooks and the suspension of Canela's commercial vehicle license led to further inquiries and a visual inspection of the truck. Inspectors opened the trailer, which had been sealed and padlocked by Ortiz sometime after leaving the Apio facility. Behind pallets that had shifted during the drive, an inspector saw a paper gift bag

containing kilo-sized packages of cocaine. Below that, he found a larger duffle bag stuffed with more cocaine and a package of ecstacy pills.

The crux of Ortiz's defense at trial was that he did not know the drugs were inside the trailer. The government's case rested on several lines of circumstantial evidence converging on the reasonable inference that Ortiz put the drugs in the trailer sometime after leaving the Apio facility, most likely during the lengthy stopover in Phoenix, including: (1) evidence that the loading area where Ortiz loaded the truck was very secure; (2) testimony that the drugs were not present when the truck was initially loaded; (3) Ortiz's exclusive physical control of the padlocked trailer and his control of the route; (4) the lengthy stop in Phoenix; (5) temperature recordings taken from the truck showing a spike in the temperature during the Phoenix stop; and (6) Ortiz's attempt to avoid inspection at the border crossing.

This type of circumstantial evidence lends support to the jury's inference that Ortiz had knowledge of the drugs. See United States v. Gwathney, 465 F.3d 1133, 1143 (10th Cir. 2006). And the sheer quantity of drugs, with an estimated wholesale value of nearly $400,000, "might also, and legitimately, lead a jury to consider it less likely that the drugs would be transported without the driver's knowledge." Id. The evidence was more than sufficient to permit a rational jury to find that Ortiz knowingly transported the drugs found in his trailer.

# II

At the trial, Doug Larose, general manager of the Apio loading facility, revealed that he had a list of employees who worked at the loading dock while Ortiz's truck was loaded. Neither party knew of the list before Larose's testimony.

"The Due Process Clause of the Fifth Amendment requires the prosecution to disclose all evidence that favors the defendant and is material either to guilt or to punishment." United States v. Ford, 550 F.3d 975, 981 (10th Cir. 2008) (quotation omitted); see also Brady, 373 U.S. at 87.

> A defendant who seeks a new trial based on an alleged Brady violation must show by a preponderance of the evidence that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material. For the evidence to be material, there must be a reasonable probability that the result of the trial would have been different if [it] had been disclosed to the defense.

Ford, 550 F.3d 981 (quotations and citations omitted). We review de novo the denial of a motion for new trial on this ground. Id. at 992.

The Brady claim fails on the first element. The evidence in question was not suppressed, as the prosecution—including any agents working on the prosecutor's behalf—did not know the list existed. See United States v. Erickson, 561 F.3d 1150, 1163 (10th Cir. 2009) (explaining that a Brady violation is not

-5-

established unless the prosecution knew of, and had some measure of possession or control over, evidence allegedly suppressed).

"The prosecutor herself need not have, or even know of, the evidence if one of her agents has it." Id. The duty to disclose "extends to prosecutors, police, and other government investigators." United States v. Velarde, 485 F.3d 553, 559 (10th Cir. 2007). But Larose was clearly none of these. He was simply a lay witness asked to explain operations at the private commercial facility where he worked. Because Larose was not a member of the prosecution, there was no Brady violation.

## III

During Ortiz's trial, the prosecutor During Ortiz's trial, the prosecutor asked an improper question that Ortiz alleges rose to the level of prosecutorial misconduct. On cross-examination of a transportation expert presented by the defense, who had explained industry practices relevant to various events in the case, the prosecutor attempted to elicit testimony that the expert had testified for the defense in another case in which a defendant was acquitted, then promptly arrested again. The implication was that the expert helped exonerate guilty people.

When prosecutorial misconduct is the basis of a motion for mistrial or new trial, we review the denial of relief for abuse of discretion. United States v.

Maynard, 236 F.3d 601, 605 (10th Cir. 2000).  We reverse only upon a showing of prejudice from the misconduct.  Id. at 606.  In assessing the impact of the misconduct, "we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case."  Id. (quotation omitted).

The district court recognized the improper thrust of the prosecutor's questioning, but held that a new trial was not warranted because:  (1) this was a singular, isolated incident of the sort that ordinarily would not warrant a mistrial; and (2) the court acted promptly and effectively to mitigate any prejudice by sustaining defense counsel's objection, striking the offending questions and responses, and issuing a curative instruction to the jury.  We do not find any abuse of discretion.

**IV**

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge