**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 30, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALFREDO TORRES,

Defendant - Appellant.

No. 07-2158

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 06-CR-257-MCA)**

Joe M. Romero, Jr., Albuquerque, New Mexico, for Defendant-Appellant.

Terri J. Abernathy, Assistant United States Attorney, (Gregory J. Fouratt, United States Attorney, with her on the brief) Las Cruces, New Mexico, for Plaintiff-Appellee.

Before **KELLY** and **LUCERO**, Circuit Judges, and **EAGAN**,[*] District Judge.

**KELLY**, Circuit Judge.

---

[*]The Honorable Claire V. Eagan, United States District Judge for the Northern District of Oklahoma, sitting by designation.

Alfredo Torres was convicted of one count of distribution of five grams or more of methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(B), after law enforcement officers conducted a controlled buy using a confidential informant ("CI"). I R. Docs. 21 & 59. Mr. Torres received a sentence of seventy months' imprisonment, followed by five years' supervised release. I R. Doc. 64. He then filed a motion for a new trial under Fed. R. Crim. P. 33(b), claiming that the government suppressed certain evidence relating to the CI. The district court denied the motion. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse the district court's order and remand for a new trial.

Background

Mr. Torres's conviction arises out of a controlled methamphetamine buy on May 2, 2005, which was organized by the Region II Narcotics Task Force ("Task Force"). IV R. at 30, 97-98, 102-13. The CI entered into an agreement on December 6, 2004, with the Task Force to assist in drug trafficking investigations, and on May 2, 2005, she reported to the state police office to set up a buy. IV R. at 24, 30. From the police station, the CI telephoned Esther Esparza, Mr. Torres's mother, in an attempt to buy one ounce of methamphetamine. IV R. at 31-32, 35-36. In response, Ms. Esparza informed the CI that she would telephone "Freddy." IV R. at 31-32. Prior to the buy, the CI and her car were searched by law enforcement agents and she was fitted with a body wire. IV R. at 36-37.

-2-

Followed by the agents, the CI met with the target of the buy, completed the transaction, and turned the drugs over to an agent. IV R. at 37-42. The agents then searched the CI and her car again. IV R. at 42-43. The CI was paid $100 for her assistance. IV R. at 64. After a warrant was issued, Mr. Torres was arrested on January 30, 2006. IV R. at 111-13; see also I R. Doc. 8.

In preparation for trial, on July 6, 2006, the district court issued a general discovery order pursuant to Fed. R. Crim. P. 16. I R. Doc. 28. At some point, the government informed Mr. Torres that, among other details, (1) the CI was paid $100 for the controlled buy on May 2, 2005; (2) the CI had cooperated with the government for approximately eight months; (3) the CI was a methamphetamine user but had not used for more than fifteen months; and (4) the CI has two prior felony convictions. I R. Doc. 30. On July 17, 2006, Mr. Torres filed a request for additional discovery regarding the CI. I R. Doc. 30. Citing Giglio v. United States, 405 U.S. 150 (1972), Mr. Torres requested the following:

a. The Informant Agreement signed by the CI with the Region II Narcotics Taskforce;

b. Daily Contingency Reports, signed by the CI, confirming the disbursement and receipt of funds made by the CI by the Taskforce;

c. All Charge/Sentence Reduction Agreements entered into by and between the CI and any prosecuting agency;

d. A copy of all information and statements provided by the CI prior to targeting the Defendant for a controlled buy;

e. A copy of all records of conversations, agreements and issues related

-3-

to the CI, required to be maintained by the Taskforce as part of its agreement with the CI.

I R. Doc. 30.

In its response to Mr. Torres's request, the government indicated that it had provided the information requested in paragraph (a) and in paragraph (b), as it related to the instant offense; that paragraph (c) was inapplicable; and that no additional documentation existed relating to paragraphs (d) and (e). I R. Doc. 32. The government further indicated that it had informed Mr. Torres that "no other agreements with the [CI] exist." I R. Doc. 32. On August 8, 2006, the district court granted Mr. Torres's request for additional discovery with regard to the information already provided, and denied his request with regard to any additional contingency reports related to other investigations. I R. Doc. 52 at 5. The court found that the government had already produced the requested information, which provided Mr. Torres with "a sufficient basis to attack the confidential witness's credibility through cross-examination." I R. Doc. 52 at 5. The disclosure of the additional contingency reports was deemed unnecessary as they were not "material" under Giglio. I R. Doc. 52 at 5. Thus, the court found that the government had "satisfied its discovery obligations under Giglio." I R. Doc. 52 at 5.

Mr. Torres's trial commenced on August 9, 2006. During preliminary discussions, the district court barred Mr. Torres's counsel from cross-examining

the CI about two state criminal complaints that had been filed against her in March 2004—the first for possession of a controlled substance and drug paraphernalia, and the second for nine counts of forgery. II R. Doc. 70 at 3; IV R. at 6-15. Both complaints were dismissed without prejudice on April 7, 2004. IV R. at 6-7, 12-13. However, Mr. Torres's counsel was permitted to cross-examine the CI about a 1996 forgery conviction and her use of methamphetamine, among other topics. II R. Doc. 70 at 2-3; IV R. at 15-20. After a two-day trial, the jury returned a verdict of guilty. I R. Doc. 59.

In his motion for a new trial, Mr. Torres argued that he was entitled to a new trial based on his discovery of impeachment evidence related to the CI, which the government had failed to disclose prior to his trial. II R. Doc. 65. This evidence included the fact that the CI had been retained by the Drug Enforcement Administration ("DEA") as an informant on two prior occasions, which came to light through discovery in a related case. See II R. Doc. 68 at Exhibits 2, 4, 5. On the first occasion, the DEA had contracted with the CI from February 23, 2004, to March 15, 2004, at which time she was de-activated as a result of the 2004 forgery charge. II R. Doc. 65 at 2. On the second occasion, the DEA had contracted with the CI from August 10, 2005, to December 12, 2005. II R. Doc. 65 at 2. Both of these engagements occurred prior to Mr. Torres's indictment, which was filed on February 7, 2006. I R. Doc. 9. The revelation of these DEA engagements led Mr. Torres to further allege that the government knew that the

CI had continued to engage in freelance drug dealing and forgery during the period of September 2005 to December 2005. See II R. Docs. 65, 67. The government disputes these allegations. See II R. Doc. 66. At trial, the CI testified that she had not used any controlled substances since December 2004. IV R. at 28.

In addition, Mr. Torres claims that, during a debriefing with DEA and Taskforce agents, the CI had misidentified Ms. Esparza's nephew as her son, claiming that the pair were engaged in drug trafficking. II R. Doc. 65 at 3. Mr. Torres argues that all of this information was "relevant and exculpatory" and that the deprivation of it constituted a Brady violation. II R. Doc. 65 at 4-5.

Because Mr. Torres did not file his motion within seven days after the verdict was entered, in deciding the motion the district court applied the five-factor test for newly discovered evidence set forth in United States v. Herrera, 481 F.3d 1266, 1270 (10th Cir. 2007).[1] See II R. Doc. 70; see also I R. Doc. 59 (entered Aug. 10, 2006); II R. Doc. 65 (filed Jan. 11, 2007). In so doing, the

---

[1] To prevail under the five-factor test, a moving party must show that

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

Herrera, 481 F.3d at 1270 (quoting United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997)).

court found that the CI's involvement in criminal activities during 2004 and 2005

did not constitute "newly discovered evidence" pursuant to Fed. R. Crim. P. 33.

II R. Doc. 70 at 8.  The court further found that the relevance of this information

depended "on [its] relationship to the belated disclosure of the other periods

during which the DEA retained the [CI] as a confidential source."  II R. Doc. 70

at 8.  According to the district court, putting the two together would not "rise to

the level of materiality . . . that would probably produce an acquittal."  II R. Doc.

70 at 8-9.  In the court's view, the evidence presented was simply cumulative

impeachment evidence

> because Defendant's counsel already was permitted to elicit testimony and present argument concerning the [CI]'s forgery conviction, her history of drug use, her lack of employment, the payments she received for her cooperation, her inability to remember certain details of the controlled purchase involving Defendant, her misidentification of Esther Esparza's nephew as her son, and other topics which could have undermined the [CI]'s credibility as a witness in the eyes of the jury.

II R. Doc. 70 at 11.

Because the agents involved in the May 2, 2005, controlled buy were able

to identify Mr. Torres, and the bag of methamphetamine used in the buy was

admitted into evidence, the district court distinguished this case from United

States v. Velarde, 485 F.3d 553 (10th Cir. 2007).  II R. Doc. 70 at 12; see also

United States v. Stevens, 978 F.2d 565, 570 (10th Cir. 1992).  According to the

court, this was not a case where a witness's "uncorroborated testimony provided

-7-

virtually the only evidence of a suspect's guilt." II R. Doc. 70 at 12. Rather, the controlled buy generated corroborating evidence upon which a jury could infer Mr. Torres's guilt, even with the impeachment evidence. II R. Doc. 70 at 12.

Discussion

Our review of a Brady claim asserted in the context of a Rule 33 motion for a new trial is de novo, with any factual findings reviewed for clear error. United States v. Mendez, 514 F.3d 1035, 1046 (10th Cir. 2008); United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003). "A defendant who seeks a new trial based on an alleged Brady violation must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." Velarde, 485 F.3d at 558 (internal quotation marks omitted); see also Brady v. Maryland, 373 U.S. 83, 87 (1963). If these three factors are satisfied, regardless of the prosecution's intentions in suppressing the evidence, a new trial is justified. See Giglio, 405 U.S. at 154. In the event that "the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." Id. (internal quotation marks omitted).

On appeal, Mr. Torres argues that the district court erred in applying the five-part test for newly discovered evidence discussed in Herrera. See 481 F.3d at 1270 (quoting Sinclair, 109 F.3d at 1531); see also Stevens, 978 F.2d at 570.

We have repeatedly differentiated claims based upon suppression of evidence from other newly discovered evidence claims. See United States v. Redcorn, 528 F.3d 727, 743-44 (10th Cir. 2008); Mendez, 514 F.3d at 1046. Where a Brady violation is claimed, the five-factor test is inapplicable. United States v. Quintanilla, 193 F.3d 1139, 1149 n.10 (10th Cir. 1999); United States v. Robinson, 39 F.3d 1115, 1119 (10th Cir. 1994). Although the district court acknowledged the Brady factors in its opinion, see II R. Doc. 70 at 6, it applied the five-factor test, albeit modified by Brady, see II R. Doc. 70 at 5-12. The district court's application of this "melded" test, which resulted in the discounting of impeachment evidence and a heightened burden on Mr. Torres, was erroneous and led the court to an incorrect result: that Mr. Torres was not entitled to a new trial because the "resulting combination of evidence [wa]s merely impeaching and [did] not rise to the level of materiality . . . that would probably produce an acquittal or undermine confidence in the jury's verdict." II R. Doc. 70 at 8-9 (internal citation omitted). Such error was not harmless. See Redcorn, 528 F.3d at 743 (noting that the Rule 33 standard is "easier to meet" with a Brady claim). Analyzed under the less-demanding Brady standard, it is apparent that the DEA agreements are material and a new trial is warranted. See Trammell v. McKune, 485 F.3d 546, 552 (10th Cir. 2007).

    With respect to his allegation of a Brady violation, Mr. Torres argues that the government suppressed (1) evidence of the CI's work as a DEA informant

both prior to and following the controlled buy, and (2) a document dated August 10, 2005, reporting a conversation in which the CI misidentified Ms. Esparza's nephew as her son. Aplt. Br. 17. Because the government concedes that it failed to disclose this information and that this information was favorable to Mr. Torres, we need only reach the issue of materiality under Brady. Aple. Br. 15 n.8.

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.); Knighton v. Mullin, 293 F.3d 1165, 1172 (10th Cir. 2002). We examine the potential impact of the undisclosed evidence "in light of the whole record. What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict." United States v. Robinson, 39 F.3d 1115, 1119 (10th Cir. 1994) (citing United States v. Agurs, 427 U.S. 97, 112-13 (1976)); see also Kyles v. Whitley, 514 U.S. 419, 435 (1995). Impeachment evidence is considered exculpatory for Brady purposes. Bagley, 473 U.S. at 676; United States v. Smith, 534 F.3d 1211, 1222 (10th Cir. 2008).

The district court found that the DEA agreements, in conjunction with the March 2004 criminal charges and the allegations of criminal activity occurring in 2005, were merely impeaching and did not meet the test of materiality in such a

way "that would probably produce an acquittal or undermine confidence in the jury's verdict." II R. Doc. 70 at 8-9 (internal citations omitted). The government adds that, even if it had disclosed the DEA agreements and the misidentification, such evidence was irrelevant and cross-examination on these topics would have been cumulative. Aple. Br. 15, 20. However, this analysis seriously underestimates the extent to which the government's case rested on the credibility of the CI. The CI's trial testimony was critical to the government's ability to link Mr. Torres to the controlled buy.

Rule 608(b) of the Federal Rules of Evidence permits cross-examination on specific instances of a witness's conduct, if probative of the witness's character for truthfulness or untruthfulness. Whether Mr. Torres thought he might call potential "impeachment witnesses" is irrelevant to our consideration of what may be asked on cross-examination.[2] I R. Doc. 36. While the admission of such evidence is at the discretion of the district court, "it may well be an abuse of discretion not to allow such cross-examination in a criminal case where the vast majority of inculpatory evidence" is based on a lone witness's testimony. Velarde, 485 F.3d at 563. This is just such a case.

Mr. Torres persuasively argues that the government's case hinges on the CI's credibility. Aplt. Br. 22-25. The trial transcript reveals various deficiencies

---

[2] We also note that, under Fed. R. Evid. 608(b), extrinsic evidence is ordinarily not permitted to show specific instances of conduct. United States v. Thomas, 467 F.3d 49, 55-56 (1st Cir. 2006).

in the government's attempt to prove that Mr. Torres was indeed the person involved in the controlled buy, including that the target of the buy was driving a car with dark tinted windows, IV R. at 56-57; V R. at 186; the officers could not hear any of the conversations that took place between the CI and the target, except to identify the target as male, IV R. at 109; V R. at 167-68, 254-55, 256-58; the only confirmation that the target was Mr. Torres came through the officers' identification of the target through the windshield of a moving vehicle, IV R. at 111; V R. at 169-70, 187-88, 193, 205-07, 210-11, 229-31, 237, 258-62, 287-88; the buy money was never recovered from Mr. Torres, V R. at 168; the search of the CI and her car did not involve canine dogs or a female officer to search the CI's underwear, indicating that she could have stored the drugs prior to the buy, V R. at 164-65, 173-74; and in fact none of the officers actually saw or had photographs of the defendant taking part in the transaction, V R. at 168-69, 177-78, 199, 209-10, 256, 292.

Defendant's counsel was permitted to cross-examine the CI about her 1996 forgery conviction and her use of methamphetamine over the course of her life. IV R. at 23, 46. Defendant's counsel also cross-examined one of the law officers about an alleged misidentification of the defendant made by the CI. V R. at 176; see also IV R. at 125-32; V R. at 141-46. However, the government rehabilitated by presenting testimony from the agents involved that the CI was, "[i]f not the most reliable, one of the most reliable confidential witnesses that has ever worked

for . . . Region II Narcotics." IV R. at 99. The CI was further characterized as a reliable business owner, IV R. at 23, who began working as an informant, as the CI stated at trial, "for the better of the community," IV R. at 64. Additionally, she testified to being drug-free from December 2004 to the date of the trial. IV R. at 28.

The evidence demonstrating the CI's breach of a prior agreement with the DEA in 2004, along with the allegations of criminal conduct occurring in 2005, raises a reasonable probability that the outcome in this case might have been different. The government's failure to disclose these other agreements, in connection with the district court's decision to preclude cross-examination on the CI's alleged criminal activities during these previous engagements, made the presentation of this additional impeachment testimony impossible. While we cannot speculate on whether the district court's decision to exclude this testimony would have been different had it been aware of the additional DEA agreements, the failure to disclose this evidence sufficiently undermines our confidence in the outcome of this case. See Scott v. Mullin, 303 F.3d 1222, 1230 (10th Cir. 2002).

The same can be said of evidence that the CI had misidentified Mr. Torres in an August 10, 2005, DEA debriefing. See II R. Doc. 68 at Exhibit 4. The government argues that this evidence is merely cumulative of another alleged misidentification that took place on May 17, 2005, and about which defendant's counsel was permitted to cross-examine the CI. Aple. Br. 20-21; see also IV R.

127-32; V R. at 139-46, 176. In the August 2005 document, the CI fails to mention Mr. Torres's name at all, and instead indicates that it is actually Mr. Torres's cousin who deals in large quantities of methamphetamine. II R. Doc. 68 at Exhibit 4. In addition, just as she had allegedly done in the May 17, 2005, misidentification, the CI erroneously identifies Ms. Esparza as the mother of one of Mr. Torres's cousins. II R. Doc. 68 at Exhibit 4. Undeniably, the fact that Ms. Esparza and her sister are identical twins, coupled with the fact that their sons call both of the women "mother" interchangeably, confuses the matter further. See IV R. at 126, 129. However, with this additional impeachment evidence, defense counsel could have shown that, rather than the first misidentification being a one-time slip-of-the-tongue, the CI had difficulty identifying the various members of Mr. Torres's extended family and might reasonably have thought she was dealing with one member when in fact it was another.

Merely because other impeachment evidence was presented does not mean that additional impeachment evidence is cumulative; rather, this is a case where the agents' identification is weak at best and no physical evidence exists to link the defendant to the alleged crime. The government's near-total reliance on the testimony of the CI to establish that Mr. Torres was indeed the person participating in the controlled buy requires a new trial. See Trammell, 485 F.3d at 552 ("We need to be convinced only that the government's evidentiary suppression undermines confidence in the outcome of the trial." (internal

-14-

quotation marks omitted)).

REVERSED and REMANDED for a new trial.